# IN THE UNITED STATES DISTRICT COURT FOR THE
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| NORA PENALOZA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Case No. 12 C 8728 |
| v. ) | |
| ) | Judge Joan H. Lefkow |
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Defendant. ) | |

## OPINION AND ORDER

Petitioner Nora Penaloza was convicted of one count of possession with intent to distribute cocaine and was sentenced to the statutory minimum of 120 months in custody. *United States* v. *Penaloza*, No. 08 CR 117 (N.D. Ill. Oct. 2, 2009); (Cr. dkt. 80.)[1] The Seventh Circuit affirmed Penaloza's sentence on August 5, 2011. 648 F.3d 539, 541 (7th Cir. 2011). Penaloza has filed a *pro se* motion to vacate, set aside, or correct her sentence pursuant to 28 U.S.C. § 2255, arguing that she was denied her Sixth Amendment right to effective assistance of counsel. Penaloza alleges that her attorney (1) failed to adequately communicate a plea offer, (2) improperly advised her to proceed to trial, and (3) failed to correctly explain her potential sentence. For the reasons stated below, the motion is denied.

---

[1] References to the docket in Penaloza's underlying criminal case are cited as (Cr. dkt. ___).

# BACKGROUND[2]

## I. Factual Background

In 2006, the Drug Enforcement Administration ("DEA") was investigating Jorge Gutierrez, a suspected broker for a Colombian drug-trafficking organization. During the course of its investigation, the DEA started working with a cooperating informant who put Gutierrez in contact with an undercover DEA agent ("the UCA"). Through the UCA, Gutierrez attempted to sell 200 kilograms of cocaine to buyers in Spain. Although Spanish law enforcement officials apprehended the buyers, the UCA told Gutierrez that he had successfully sold 130 kilograms and that Gutierrez needed to find a buyer for the remaining 70 kilograms.

Gutierrez eventually located a buyer who arranged for Penaloza to transport the cocaine from the UCA in Chicago to New Jersey. Penaloza engaged in a series of recorded telephone calls making arrangements to pick up "the llaves" (which could be translated as "keys" or "wrenches" or "faucets"). (Cr. dkt. 89, tr. at 296.) On November 6, 2006, Penaloza met the UCA in a motel parking lot in Bedford Park, Illinois, where the UCA loaded three duffel bags of sham cocaine wrapped in white paper into Penaloza's car. Penaloza began the drive to New Jersey but was stopped by police in Portage, Indiana. Penaloza eventually admitted that she had been offered $500 to retrieve packages from Chicago and return them to New Jersey. The undercover agent testified that, when Penaloza was asked if she knew the bags contained drugs, she nodded and said, "Yes." Testifying at trial, Penaloza denied this admission, denied that she

---

[2] Because much of what Penaloza asserts derives from encounters between herself and her counsel, the government is not in a position to dispute her representation of the facts. The summary herein is taken from Penaloza's memorandum in support of her motion (dkt. 4), the government's response (dkt. 13), Penaloza's reply (dkt. 15), and the exhibits attached thereto. Penaloza's averments are assumed true unless contradicted by the record.

2

knew the packages contained cocaine, and further testified that she believed she was picking up car parts, computer parts, and wrenches in Chicago.

## II.     Pre-Trial Proceedings

A grand jury indicted Penaloza on February 7, 2008. (Cr. dkt. 1.) The court appointed Attorney David M. Neely to represent Penaloza on September 22, 2008. Mr. Neely represented Penaloza throughout the litigation in the district court.

Penaloza alleges that before her second bail hearing, she spoke with Neely and requested that he seek a favorable plea offer for her. She indicated to Neely that she would be willing to cooperate with the government in exchange for a reduced sentence.

On February 25, 2009, the government gave Neely a packet regarding a potential guilty plea. The packet included a cover letter detailing Penaloza's projected sentence under the United States Sentencing Guidelines and a draft plea agreement. The cover letter, entitled "Nora Penaloza Guidelines Projection," lays out the sentencing range Penaloza would face under the Guidelines if she agreed to plead guilty. (Dkt. 13, ex. 1 at 1.) According to the cover letter, Penaloza's base offense level was 36. Assuming that both a minor role reduction and timely acceptance reduction applied, her offense level would be reduced to 28. She had one prior felony theft conviction, placing her in criminal history category II. Thus, her projected Guidelines range would be 87–108 months. (*Id.*) The statutory minimum, however, would require a sentence of 120 months unless Penaloza provided the government with "some form of cooperation." (*Id.*) The cover letter explained that if she cooperated, Penaloza "could be eligible for a departure in the amount of upto [sic] 30 months [off the low end of her Guidelines range] (or a sentence of 57 months)." (*Id.*) The cover letter noted that there would be a "considerable swing" in her sentencing range should she continue to trial; if she was convicted, her Guidelines

3

sentence would increase to 151–188 months (the government estimated an offense level of 31 and a criminal history category of II). (*Id.*)

The draft plea agreement attached to the cover letter reiterates the Guidelines calculation set forth in the cover letter: 87–108 months with a 120 month mandatory minimum. It also states that the government agrees to recommend a sentence within the Guidelines range subject to the mandatory minimum. (*Id.*)

On February 25, 2009, Penaloza's case was set for a hearing on a noticed motion for leave to present an entrapment defense. Penaloza alleges that before the hearing, Neely handed her a copy of the plea agreement *without* the cover letter. Penaloza claims that Neely spent approximately two minutes discussing the draft plea with her and then advised her to proceed to trial. Neely did not tell Penaloza that she could receive a reduction in her offense level for accepting responsibility, for her minor role, or for cooperating. He told her that if she proceeded to trial and was convicted she would face approximately seven years in prison. He advised her that the government's case was weak.

### III.     Trial and Sentencing

On Neely's advice, Penaloza rejected the plea and proceeded to trial. She was convicted on April 15, 2009. In preparation for sentencing, Neely submitted a memorandum noting that the statutory mandatory minimum was 120 months but recommending a 24 month sentence. (*See* cr. dkt. 69.) The court sentenced Penaloza on October 2, 2009. It calculated her Guidelines offense level at 38 and her criminal history category as II, resulting in a Guidelines range of 262–327 months. The court, however, sentenced Penaloza to the mandatory minimum of 120 months' imprisonment and five years of supervised release.

4

## IV. Post-Trial Proceedings

Penaloza appealed her conviction but the Seventh Circuit affirmed on August 15, 2011. *Penaloza*, 648 F.3d at 541. During the appeal, Penaloza learned for the first time of the cover letter that accompanied the draft plea agreement. On October 31, 2012, Penaloza timely filed the instant motion to vacate, set aside, or correct her sentence pursuant to 28 U.S.C. § 2255.

## LEGAL STANDARD

Relief under § 2255 "is reserved for extraordinary situations." *Hays* v. *United States*, 397 F.3d 564, 566 (7th Cir. 2005) (quoting *Prewitt* v. *United States*, 83 F.3d 812, 816 (7th Cir. 1996)). A petitioner must establish "that the district court sentenced him in violation of the Constitution or laws of the United States or that the sentence was in excess of the maximum authorized by law or is otherwise subject to collateral attack." *Id.* at 566–67 (quoting *Prewitt*, 83 F.3d at 816). It is proper to deny a § 2255 motion without an evidentiary hearing if "the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255(b).

In order to establish constitutionally ineffective assistance of counsel, the petitioner must show (1) "that counsel's representation fell below an objective standard of reasonableness" and (2) "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland* v. *Washington*, 466 U.S. 668, 688, 694, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). To satisfy the performance prong of the *Strickland* test, the petitioner must direct the court to specific acts or omissions of counsel. *United States* v. *Trevino*, 60 F.3d 333, 338 (7th Cir. 1995). The court must then consider whether, in light of all the circumstances, counsel's performance was outside the range of professionally competent assistance. *Id.* There is a strong presumption that counsel's

performance was effective, *id.*, and the court must not let hindsight interfere with its review of counsel's decisions. *See Harris* v. *Reed*, 894 F.2d 871, 877 (7th Cir. 1990) (citing *Strickland*, 466 U.S. at 697). Under the prejudice prong, to establish the reasonable probability that the outcome would have been different, the petitioner must show "a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694. A court need not address both prongs of the *Strickland* test if one provides the answer; that is, if a court determines that the alleged deficiency did not prejudice the defendant, the court need not consider the first prong and *vice versa*. *See United States* v. *Fudge*, 325 F.3d 910, 924 (7th Cir. 2003) (citing *Matheney* v. *Anderson*, 253 F.3d 1025, 1042 (7th Cir. 2001)).

## ANALYSIS

Construing Penaloza's *pro se* filing liberally, as the court must do, *see Wyatt* v. *United States*, 574 F.3d 455, 459 (7th Cir. 2009), she makes three arguments: Neely (1) failed to adequately communicate the plea agreement by not showing her the cover letter; (2) failed to correctly explain her potential sentence; and (3) improperly advised her to proceed to trial. Because the third claim is plainly without merit,[3] the court will focus on arguments (1) and (2).

---

[3] Penaloza argues that Neely's advice to proceed to trial was ineffective assistance. Under the Sixth Amendment, counsel's advice to proceed to trial is not objectively unreasonable unless it is made "in the face of overwhelming evidence of guilt and an absence of viable defenses." *Almonacid* v. *United States*, 476 F.3d 518, 521 (7th Cir. 2007) (quoting *Gallo-Vasquez* v. *United States*, 402 F.3d 793, 798 (7th Cir. 2005)). Such was not the case with Penaloza. She successfully contested the government's claim that she was part of a conspiracy. At her trial, Penaloza testified in her own defense that she did not know she would be picking up drugs. Her defense may not have been successful, but that does not mean it was not viable. Therefore, Neely's advice to proceed to trial was not ineffective assistance.

I.  **Whether Neely's Omission of the Cover Letter and Incorrect Explanation of Sentence Exposure Constitute Ineffective Assistance of Counsel**

   A.  **Reasonable Performance Prong**

The Sixth Amendment right to effective assistance of counsel applies to all "critical" stages of criminal proceedings. *Montejo* v. *Louisiana*, 556 U.S. 778, 786, 129 S. Ct. 2079, 173 L. Ed. 2d 955 (2009) (quoting *United States* v. *Wade*, 388 U.S. 218, 227–28, 87 S. Ct. 1926, 18 L. Ed. 2d 1149 (1967)). The plea bargain context is one such critical stage, and the *Strickland* test applies to determine whether counsel's assistance regarding the plea bargain was ineffective. *See Missouri* v. *Frye*, -- U.S. ---, 132 S. Ct. 1399, 1405, 182 L. Ed. 2d 379 (2012); *Hill* v. *Lockhart*, 474 U.S. 52, 57–58, 106 S. Ct. 366, 88 L. Ed. 2d 203 (1985).

   1.  **Failure to Communicate Cover Letter**

"[D]efense counsel has the duty to communicate formal offers from the prosecution to accept a plea on terms and conditions that may be favorable to the accused." *Frye*, 132 S. Ct. at 1408. Not only must counsel communicate a plea agreement to his client, he must also do so effectively. *See Overstreet* v. *Wilson*, 686 F.3d 404, 406–07 (7th Cir. 2012) ("*Frye* does not consider whether counsel furnish ineffective assistance by failing to convey a plea offer 'effectively'; we assume without deciding that counsel must do so."), *cert. denied* -- U.S. ---, 133 S. Ct. 2735, 186 L. Ed. 2d 195 (2013). Similarly, the American Bar Association Standards for Criminal Justice recommend that "defense counsel . . . advise the defendant of the alternatives available and address considerations deemed important by defense counsel or the defendant in reaching a decision." ABA Standards for Criminal Justice, Pleas of Guilty 14–3.2(a) (3d ed. 1999); *see also Frye*, 132 S. Ct. at 1408 (recognizing widespread adoption of the ABA standard).

Neely failed to effectively represent Penaloza when he did not advise her of the cover letter and the possibility of a below-mandatory minimum sentence if she cooperated. *See* U.S.S.G. § 5K1.1 ("Upon motion of the government stating that the defendant has provided substantial assistance in the investigation or prosecution of another person who has committed an offense, the court may depart from the guidelines."); *id.* cmt. 1 ("Under circumstances set forth in 18 U.S.C. § 3553(e) and 28 U.S.C. § 994(n), as amended, substantial assistance in the investigation or prosecution of another person who has committed an offense may justify a sentence below a statutorily required minimum sentence."); 18 U.S.C. 3553(e) ("Upon motion of the Government, the court shall have the authority to impose a sentence below a level established by statute as a minimum sentence so as to reflect a defendant's substantial assistance in the investigation or prosecution of another person who has committed an offense."). The possibility of cooperation was crucial to Penaloza's consideration of whether to go to trial because cooperation was the only way for her to receive a sentence below the mandatory minimum. *See Wade* v. *United States*, 504 U.S. 181, 185, 112 S. Ct. 1840, 118 L. Ed. 2d 524 (1992) (district courts are without authority to depart below a mandatory minimum sentence without a § 5K1.1 and 18 U.S.C. § 3553(e) motion).

The fact that the cover letter was not a "formal offer" is irrelevant. The suggestion "that because defendants have no constitutional right to be offered a plea agreement, defense counsel only has the duty to communicate formal plea offers to the defendant . . . is a misreading of *Missouri* v. *Frye*." *Lechuga* v. *United States*, -- F. Supp. 2d ----, No. 12 C 8910, 2014 WL 125880, at *3 (N.D. Ill. Jan. 14, 2014). In *Lechuga*, the court ordered an evidentiary hearing on the merits of a § 2255 petition in part because the defendant's attorney failed to properly advise the defendant of his potential sentence during plea negotiations, even though the government

8

never tendered any actual plea offer. *Id.* ("Petitioner's failure to attach a formal plea agreement to his petition does not undermine his claim that he was denied effective assistance of counsel during the early stages of the plea negotiation process.").

If Penaloza's statements are taken as true, certainly Neely's failure to communicate to Penaloza the potential for cooperation constituted unreasonable performance.

### 2. Misrepresentation of Potential Sentence

Penaloza further avers that Neely gave her inaccurate advice as to her potential sentence by telling her she would face a seven-year sentence if she lost at trial. Providing grossly inaccurate advice as to the time a defendant will serve is sufficient to meet the first prong of *Strickland*. *See Gonzalez* v. *Crosby*, 545 U.S. 524, 542, 125 S. Ct. 2641, 162 L. Ed. 2d 480 (2005) (plea based on "grossly inaccurate advice" about possible sentence is "a colorable claim of a Constitutional violation"); *Julian* v. *Bartley*, 495 F.3d 487, 495 (7th Cir. 2007) (counsel who told client maximum sentence was 30 years when it was actually 60 years "was clearly wrong and therefore objectively unreasonable"); *Wieland* v. *Buss*, 185 F. App'x 527, 530 (7th Cir. 2006) (reversing denial of habeas relief where defense attorney's erroneous advice regarding potential maximum sentence caused defendant to plead guilty).

The government points out that the draft plea agreement set out the same Guidelines calculation as the cover letter: 87–108 months with a 120 month mandatory minimum. This calculation, however, did not explain what Penaloza would need to do to receive a sentence below 120 months. Considering that Penaloza was unschooled in the law, Neely's misrepresentation of her potential sentence could have affected her decision to reject a plea deal that included a longer sentence than what she believed was her worst-case scenario following a

9

conviction.[4] Neely's misrepresentation of Penaloza's sentence should she proceed to trial was patently unreasonable. Based on the facts presented, an evidentiary hearing is justified if Penaloza can also show that she was prejudiced.

### B. Prejudice

To meet the second prong of the *Strickland* analysis, Penaloza must establish a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different. *Strickland*, 466 U.S. at 694. The prejudice alleged must have more than some conceivable effect on the outcome, *see United States* v. *Ruzzano*, 247 F.3d 688, 696–97 (7th Cir. 2001) (citation omitted), and the effect of the prejudice must be "sufficient to undermine confidence in the outcome." *See Bailey* v. *Lemke*, 735 F.3d 945, 950 (7th Cir. 2013) (internal quotation marks and citation omitted). For the purposes of prejudice, any amount of jail time has Sixth Amendment significance. *See Glover* v. *United States*, 531 U.S. 198, 198–99, 121 S. Ct. 696, 148 L. Ed. 2d 604 (2001). "Even if the trial itself is free from constitutional flaw, the defendant who goes to trial instead of taking a more favorable plea may be prejudiced from either a conviction on more serious counts or the imposition of a more severe sentence." *Lafler* v. *Cooper*, -- U.S. ---, 132 S. Ct. 1376, 1386, 182 L. Ed. 2d 398 (2012). A criminal defendant shows prejudice by demonstrating that but for ineffective assistance of counsel there is a reasonable probability that (1) the plea offer would have been presented to the court, (2) the court would have accepted it, and (3) the sentence under the offer's terms would have been less severe than that actually imposed. *Id.* at 1385.

Because Penaloza received the absolute minimum sentence she could have received even had she pleaded guilty subject to the proposed plea agreement, her only avenue to relief is to

---

[4] As noted throughout, Penaloza was not aware at that point that she could be eligible for a sentence of as low as 57 months if she pleaded guilty and cooperated.

show that she could have and would have cooperated with the government so as to qualify for a motion for a downward departure from the minimum sentence.

This is a daunting challenge for Penaloza. First, the government may make or withhold a motion for departure for any reason that does not violate the Constitution. *See United States* v. *Davis*, 714 F.3d 474, 475 (7th Cir. 2013) (per curiam), *cert. denied* -- U.S. ---, 143 S. Ct. 462, 187 L. Ed. 2d 309 (2013). But if the government promises the defendant it will file a § 5K1.1 motion if the defendant cooperates, the government is bound to do so as long as the defendant performs his or her duty under the agreement. *See United States* v. *Lezine*, 166 F.3d 895, 901 (7th Cir. 1999) (government obligated to fulfill any promises it makes in exchange for a guilty plea, including promise in plea agreement to make § 5K1.1 motion). Obviously, there is no reason to believe the United States Attorney for this district would not have honored that obligation.

Under governing Seventh Circuit precedent, however, a petitioner must offer objective evidence establishing a reasonable probability of prejudice; a petitioner's self-serving statement of what she would have done is insufficient. *See, e.g.*, *Toro* v. *Fairman*, 940 F.2d 1065, 1067 (7th Cir. 1991).[5] Courts grappling with the question of whether sufficient evidence exists to support a petitioner's claim have at times resorted to evidentiary hearings. *See*

---

[5] Recently, however, the Seventh Circuit has backed away from that standard. In *Foster* v. *United States*, 735 F.3d 561 (7th Cir. 2013), the court noted "the *Toro* rule's shaky foundations [and] its lack of firm support in subsequent case law." *Id.* at 567. *Foster* also noted that it was possible that the Supreme Court would address this issue soon, as it had recently granted *certiorari* in *Burt* v. *Titlow*, -- U.S. ---, 134 S. Ct. 10, 187 L. Ed. 2d 348 (2013), in which one question presented was, "Whether a convicted defendant's subjective testimony that he would have accepted a plea but for ineffective assistance is, standing alone, sufficient to demonstrate a reasonable probability that defendant would have accepted the plea." Petition for Writ of Certiorari, *Burt* v. *Titlow,* 113 S. Ct. 1457 (Oct. 2, 2012) (No. 12-414), 2012 WL 4750282, at *i. But the Supreme Court did not decide this question in its opinion. *See Titlow*, 134 S. Ct. at 18 n.3 ("Because we conclude that the Sixth Circuit erred . . . we do not reach the other questions presented by this case, namely, whether respondent adequately demonstrated prejudice. . . .").

*Handley* v. *United States*, No. 12 C 5032, 2014 WL 3377646, at *5 (N.D. Ill. May 27, 2014) ("Frequently, evidentiary hearings are required in order to give petitioners an opportunity to provide such objective evidence." (citing *Osagiede* v. *United States*, 543 F.3d 399, 408 (7th Cir. 2008))). At a minimum, to obtain an evidentiary hearing, the petitioner must allege facts that, if proven, would entitle her to relief. *Bruce* v. *United States*, 256 F.3d 592, 597 (7th Cir. 2001) (citing *Machibroda* v. *United States*, 368 U.S. 487, 495, 82 S. Ct. 510, 7 L. Ed. 2d 473 (1962)). "[V]ague, conclusory, or palpably incredible, rather than detailed and specific" allegations will not invoke a right to an evidentiary hearing. *Id*. (internal quotation marks omitted.)

Here, Penaloza proffers nothing in the way of description of what she might have done in terms of cooperation. Indeed, her opening brief argues only that she would have accepted the plea agreement tendered by the government. In reply, she falsely states that the draft plea agreement offered a sentence of 57 months (dkt. 15 at 4), but proffers nothing with respect to cooperation.

Penaloza testified that she believed she was in Chicago to pick up repair parts for her half-brother. She repeatedly denied under oath that she knew she was carrying drugs of any kind. She has not repudiated that testimony in her motion before this court. As such, it is unlikely that she would have been useful in making a controlled buy or giving information about others in the drug trade so as to lead to the prosecution of another individual, as would be necessary to qualify for a motion for downward departure.

For these reasons, Penaloza has not shown a reasonable probability that had her attorney pursued cooperation with the government, she would have and could have cooperated so as to invoke a motion for downward departure. Therefore, she has not shown prejudice even if her allegations of ineffective assistance of counsel are accepted as true.

### III. Miscellaneous Filings and Motions

Finally, Penaloza has filed numerous documents since initially filing her § 2255 petition, including an addendum asking the court to consider her post-sentencing conduct under 18 U.S.C. § 3553(a) (dkt. 18), a letter asking for ruling on her § 2255 motion (dkt. 19), and a motion on the docket of her underlying criminal case to reduce her Guidelines range by two points pursuant to the recent Amendment 782 (cr. dkt. 99). The motion asking for a ruling is granted by entry of this Opinion and Order. The motion for a two-point reduction will be ruled on in the criminal case. The motion to consider conduct is denied because the court lacks jurisdiction to reconsider the sentence other than as stated herein.

### IV. Certificate of Appealability

Under 28 U.S.C. § 2253(c)(1), Penaloza may appeal from this final order denying relief under § 2255 only if this court issues a certificate of appealability. A certificate of appealability may issue if the applicant has made a substantial showing of denial of a constitutional right. *Id.* § 2253(c)(2). For the reasons stated above, the court finds that Penaloza has not made a showing of a substantial constitutional question for appeal, as reasonable jurists would not find this court's ruling debatable. *See Lavin* v. *Rednour*, 641 F.3d 830, 832 (7th Cir. 2011) (citing *Slack* v. *McDaniel*, 529 U.S. 473, 484–85, 120 S. Ct. 1595, 146 L. Ed. 2d 542 (2000) and *Davis* v. *Borgen*, 349 F.3d 1027, 1029 (7th Cir.2003)) (to obtain certificate of appealability before proceeding on appeal, the prisoner must show that reasonable jurists would find the district court's assessment of the constitutional claim and any antecedent procedural rulings debatable or wrong). Accordingly, the court declines to issue a certificate of appealability.

## CONCLUSION AND ORDER

For the foregoing reasons, the motion to vacate, set aside, or correct sentence is denied.

ENTER:

Date:   January 16, 2015                    _____
                                            United States District Judge